# Exhibit A



Home County Home FAQ

Search this site...

| Attorney Resources | Documents & Forms | Courts |

St. Clair County Circuit Clerk > Courts > Court Records Search

## Court Records Search

Criminal Cases | Civil Cases

**Person Search**
**Company Search**
**Case Number Search**
**Attorney Bar Number Search**
**Attorney Account Info**

### Search By Case Participant Name

Cebulske | Lynne | Date of Birth | Search

Last name is required. First name and date of birth are optional.

Participant Name | Case List | Case Details | Register of Actions

| Event Date | Event Description | Party Type | Party Name |
|---|---|---|---|
| 5/29/2014 | DOC:RECEIPT | ADMINISTRATION | |
| 5/28/2014 | ASM:COPIES | ATY PLAINTIFF | RADOS STEPHANIE L |
| 5/27/2014 | DOC:LETTER | ADMINISTRATION | |
| 5/23/2014 | DOC:RECEIPT | ADMINISTRATION | |
| 5/14/2014 | DOC:RECEIPT | ATY PLAINTIFF | RADOS STEPHANIE L |
| 5/14/2014 | DOC:AFFIDAVIT | ATY PLAINTIFF | RADOS STEPHANIE L |
| 5/14/2014 | OPN:COMPLAINT FILED | ATY PLAINTIFF | RADOS STEPHANIE L |
| 5/14/2014 | ASM:COMPLAINT FILING FEE | ATY PLAINTIFF | RADOS STEPHANIE L |

**Email Us** #10 Public Square - Belleville, IL 618-277-6600 ©2012 St. Clair County - All Rights Reserved

## AFFIDAVIT

*14L 331*

I, Stephanie L. Rados, being first duly sworn on oath state:

1.  I am an attorney for the law firm of Onder, Shelton, O'Leary & Peterson, LLC., 110 E. Lockwood, 2nd Floor, St. Louis, MO 63119, and am one of the attorneys handling the preparation and trial of the above-entitled matter.

2.  Pursuant to Supreme Court Rule 222(b), the total money damages to be sought by Plaintiff exceeds FIFTY THOUSAND DOLLARS ($50,000.00).

FURTHER, AFFIANT SAYETH NOT.

_____
Stephanie L. Rados

Subscribed and sworn to before me this 14th day of May, 2014.

_____
Notary Public

My Commission expires:

JENNIFER E. ISRAEL
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Charles County
My Commission Expires: August 18, 2015
Commission Number 11229239



FILED
ST. CLAIR COUNTY

MAY 1 4 2014

41
CIRCUIT CLERK

2

**ST CLAIR COUNTY**
**TWENTIETH CIRCUIT COURT, KAHALAH A. CLAY**

**RECEIPT #: C   000350270**          **DATE: 05-14-2014**          **TIME: 13:39:58**
**RECEIVED OF: RADOS STEPHANIE L**                                **MEMO:**
    **PART. ID: 917265**
    **BY CLERK: RC**
     **CHECKS: A   37819**          $246.00

| CASH | CREDIT | CHANGE | OTHER |
|------|--------|--------|-------|
| $0.00 | $0.00 | $0.00 | $0.00 |

| CASE NUMBER | EVENT | COURT/JUDGE | TAX NO. | AMOUNT |
|-------------|-------|-------------|---------|--------|
| 14-L-0331 | 2023 | PMT:CFIL COMPLAINT FILING FEE | | $246.00 |
| CEBULSKE VS JOHNSON JOHNSON | | | | |
| PARTY: RADOS STEPHANIE L | | | | |

**TOTAL RECEIPT...**          $246.00

\* CHECK/CHEQUE IS CONDITIONAL PAYMENT
\* PENDING RECEIPT OF FUNDS FROM BANK. \*

# IN THE CIRCUIT COURT OF ST. CLAIR COUNTY
## STATE OF ILLINOIS

LYNNE CEBULSKE,

                Plaintiff,

v.

JOHNSON & JOHNSON
**Serve:**    Steven M. Rosenberg
             Registered Agent
             One Johnson & Johnson Plaza
             New Brunswick, NJ  08933

and

JOHNSON & JOHNSON CONSUMER
COMPANIES, INC.
**Serve:**    Person in Charge
             One Johnson & Johnson Plaza
             New Brunswick, NJ  08933

and

IMERYS TALC AMERICA, INC., f/k/a
LUZENAC AMERICA, INC.
**Serve:**    CSC-Lawyers Incorporating Service
             Company
             Registered Agent
             221 Bolivar
             Jefferson City, MO  65101

and

PERSONAL CARE PRODUCTS COUNCIL, f/k/a
COSMETIC, TOILETRY, AND FRAGRANCE
ASSOCIATION
**Serve:**    Person In Charge
             1101 17th Street N.W.
             Washington, D.C.  20036

                Defendants.

---

**FILED**
**ST. CLAIR COUNTY**

**MAY 1 4 2014**

CIRCUIT CLERK

Case No.: )4L 33/

**JURY TRIAL DEMANDED**

**PLAINTIFF IS SEEKING MORE THAN $50,000.00**

## COMPLAINT

COMES NOW Plaintiff Lynne Cebulske, by and through her undersigned counsel, and for her cause of action against Defendants Johnson & Johnson, Johnson & Johnson Consumer Companies, Inc., Imerys Talc America, Inc., f/k/a Luzenac America, Inc., Personal Care Products Council, f/k/a Cosmetic, Toiletry, and Fragrance Association, states the following:

## INTRODUCTION

1.     This action arises out of the development of ovarian cancer by Lynne Cebulske, as a direct and proximate result using Johnson & Johnson Baby Powder and Shower to Shower powder (hereinafter "the PRODUCTS"), two talc-based products in the perineal area.

## PARTIES, JURISDICTION, and VENUE

2.     At all times pertinent herto, Plaintiff Lynne Cebulske was and is an adult and citizen of the State of Illinois.

3.     Defendant Johnson & Johnson is a New Jersey corporation with its principle place of business in the State of New Jersey.  At all pertinent times, Johnson & Johnson was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing the PRODUCTS.  At all pertinent times, Johnson & Johnson regularly transacted, solicited, and conducted business in the State of Illinois, including the marketing, promoting, selling, and/or distribution of the PRODUCTS.

4.     Defendant Johnson & Johnson Consumer Companies, Inc. is a New Jersey corporation with its principle place of business in the State of New Jersey.  At all pertinent times, Johnson & Johnson Consumer Companies, Inc. was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing the PRODUCTS. At all pertinent times, Johnson & Johnson Consumer Companies, Inc. regularly transacted, solicited, and conducted

2

business in the State of Illinois, including the marketing, promoting, selling, and/or distribution of the PRODUCTS.

5.     Defendants Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc. have, at all pertinent times, conducted continuous and systematic business in the State of Illinois and placed the PRODUCTS in the stream of commerce with the knowledge and intent that they be sold in the State of Illinois, and be consumed by Illinois citizens and residents.

6.     At all pertinent times, Defendant Johnson & Johnson Consumer Companies, Inc. has been a wholly owned subsidiary of Defendant Johnson & Johnson, under the complete dominion of and control of Defendant Johnson & Johnson, and the agent and alter ego of Defendant Johnson & Johnson. Hereinafter, unless otherwise delineated, these two entities shall be collectively referred to as the "Johnson & Johnson Defendants."

7.     Defendant Imerys Talc America, Inc., f/k/a Luzenac America, Inc. ("Imerys Talc") is a Delaware corporation with its principle place of business in the State of California. At all pertinent times, Imerys Talc has maintained a registered agent in the State of Illinois. At all pertinent times, Imerys Talc has been in the business of mining and distributing talcum powder for use in talcum powder based products, including the PRODUCTS. Imerys Talc is the successor or continuation of Luzenac America, Inc., and Imerys Talc is legally responsible for all liabilities incurred when it was known as Luzenac America, Inc.

8.     Defendant Personal Care Products Counsel Foundation ("PCPC"), f/k/a Cosmetic, Toiletry, and Fragrance Association ("CTFA") is a corporation organized under the laws of the District of Columbia, with its principle place of business in the District of Columbia. PCPCA is the successor or continuation of CTFA, and PCPA is legally responsible for all liabilities incurred when it was known as CTFA.

3

## ALLEGATIONS COMMON TO ALL COUNTS

9.      Talc is a magnesium trisilicate and is mined from the earth. Talc is an inorganic mineral. Imerys Talc mined the talc contained in the PRODUCTS.

10.      Talc is the main substance in talcum powders. The Johnson & Johnson Defendants manufactured the PRODUCTS. The PRODUCTS are composed almost entirely of talc.

11.      At all pertinent times, a feasible alternative to the PRODUCTS has existed. Cornstarch is an organic carbohydrate that is quickly broken down by the body with no known health effects. Cornstarch powders have been sold and marketed for the same uses with nearly the same effectiveness.

12.      Imerys Talc[1] has continually advertised and marketed talc as safe for human use.

13.      Imerys Talc supplies customers with material safety data sheets for talc. These material safety data sheets are supposed to convey adequate health and warning information to its customers.

14.      Historically, "Johnson's Baby Powder" has been a symbol of freshness, cleanliness, and purity. During the time in question, the Johnson & Johnson Defendants., advertised and marketed this product as the beacon of "freshness" and "comfort", eliminating friction on the skin, absorbing "excess wetness" helping to keep skin feeling dry and comfortable, and "clinically proven gentle and mild". The Johnson & Johnson Defendants compelled women through advertisements to dust themselves with this product to mask odors. The bottle of "Johnson's Baby Powder" specifically targets women by stating, "For you, use every day to help feel soft, fresh, and comfortable."

---

[1] All allegations regarding actions taken by Imerys Talc also include actions taken while that entity was known as Luzenac America, Inc.

4

15.     During the time in question, the Johnson & Johnson Defendants advertised and marketed the product "Shower to Shower" as safe for use by women as evidenced in its slogan, "A sprinkle a day keeps odor away", and through advertisements such as, "Your body perspires in more places than just under your arms.  Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day." And "SHOWER to SHOWER can be used all over your body."

16.     The Plaintiff, Lynne Cebulske, used the PRODUCTS to dust her perineum for feminine hygiene purposes from approximately 1992 to 2014, with such action taking place in the State of Illinois.  This was an intended and foreseeable use of the PRODUCTS based on the advertising, marketing, and labeling of the PRODUCTS.

17.     On May 14, 2012, Plaintiff was diagnosed with ovarian cancer while living in the State of Illinois.  At the time of her diagnosis Plaintiff was fifty-seven (57) years old and did not have any risk factors, genetic or otherwise, for the disease. Plaintiff had no basis for discovering her cause of action prior to this date.

18.     In 1971, the first study was conducted that suggested an association between talc and ovarian cancer. This study was conducted by Dr. WJ Henderson and others in Cardiff, Wales.

19.     In 1982, the first epidemiologic study was performed on talc powder use in the female genital area. This study was conducted by Dr. Daniel Cramer and others. This study found a 92% increased risk in ovarian cancer with women who reported genital talc use.  Shortly after this study was published, Dr. Bruce Semple of Johnson & Johnson came and visited Dr. Cramer about his study.  Dr. Cramer advised Dr. Semple that Johnson & Jonhson should place a warning on its talcum powders about the ovarian cancer risks so that women can make an informed decision about their health.

5

20.     Since 1982, there have been approximately twenty-two (22) additional epidemiologic studies providing data regarding the association of talc and ovarian cancer. Nearly all of these studies have reported an elevated risk for ovarian cancer associated with genital talc use in women.

21.     In 1993, the United States National Toxicology Program published a study on the toxicity of non-asbestiform talc and found clear evidence of carcinogenic activity. Talc was found to be a carcinogen, with or without the presence of asbestos-like fibers.

22.     In response to the United States National Toxicology Program's study, the Cosmetic Toiletry and Fragrancy Association (CTFA) formed the Talc Interested Party Task Force (TIPTF). The Johnson & Johnson Defendants and Imerys Talc were members of the CTFA and were the primary actors and contributors of the TIPTF. The stated purpose of the TIPTF was to pool financial resources of these companies in an effort to collectively defend talc use at all costs and to prevent regulation of any type over this industry. The TIPTF hired scientists to perform biased research regarding the safety of talc, members of the TIPTF edited scientific reports of the scientists hired by this group prior the submission of these scientific reports to governmental agencies, members of the TIPTF knowingly released false information about the safety of talc to the consuming public, and used political and economic influence on regulatory bodies regarding talc. All of these activities have been well coordinated and planned by these companies and organizations over the past four (4) decades in an effort to prevent regulation of talc and to create confusion to the consuming public about the true hazards of talc relative to ovarian cancer.

23.     On November 10, 1994, the Cancer Prevention Coalition mailed a letter to then Johnson & Johnson C.E.O, Ralph Larson, informing his company that studies as far back as 1960's ". . . shows conclusively that the frequent use of talcum powder in the genital area poses a serious

health risk of ovarian cancer." The letter cited a recent study by Dr. Bernard Harlow from Harvard Medical School confirming this fact and quoted a portion of the study where Dr. Harlow and his colleagues discouraged the use of talc in the female genital area.  The letter further stated that 14,000 women a year die from ovarian cancer and that this type of cancer is very difficult to detect and has a low survival rate.  The letter concluded by requesting that Johnson & Johnson withdraw talc products from the market because of the alternative of cornstarch powders, or at a minimum, place warning information on its talc-based body powders about ovarian cancer risk they pose.

24.     In 1996, the condom industry stopped dusting condoms with talc due to the health concerns of ovarian cancer.

25.     In February of 2006, the International Association for the Research of Cancer (IARC) part of the World Health Organization published a paper whereby they classified perineal use of talc based body powder as a "Group 2B" human carcinogen.  IARC, which is universally accepted as the international authority on cancer issues, concluded that studies from around the world consistently found an increased risk in ovarian cancer in women from perineal use of talc. IARC found that between 16-52% of women in the world were using talc to dust their perineum and found an increased risk of ovarian cancer in women talc users ranging from 30-60%.  IARC concluded with this "Evaluation": "There is limited evidence in humans for the carcinogenicity of perineal use of talc-based body powder."  By definition "Limited evidence of carcinogenicity" means "a positive association has been observed between exposure to the agent and cancer for which a causal interpretation is considered by the Working Group to be credible, but chance, bias or confounding could not be ruled out with reasonable confidence."

26.     In approximately 2006, the Canadian government under The Hazardous Products Act and associated Controlled Products Regulations classified talc as a "D2A" , "very toxic",

7

"cancer causing" substance under its Workplace Hazardous Materials Information System (WHMIS). Asbestos is also classified as "D2A".

27.     In 2006, Imerys Talc began placing a warning on its Material Safety Data Sheets (MSDS) it provided to the Johnson & Johnson Defendants regarding the talc it sold to them to be used in the PRODUCTS. These MSDSs not only provided the warning information about the IARC classification but also included warning information regarding "States Rights to Know" and warning information about the Canadian Government's "D2A" classification of talc as well.

28.     The Defendants had a duty to know and warn about the hazards associated with the use of the PRODUCTS.

29.     The Defendants failed to inform its customers and end users of the PRODUCTS of a known catastrophic health hazard associated with the use of its products.

30.     In addition, the Defendants procured and disseminated false, misleading, and biased information regarding the safety of the PRODUCTS to the public and used influence over governmental and regulatory bodies regarding talc.

31.     Attached hereto as Exhibit 1 is the affidavit of Plaintiff's attorney pursuant to Illinois Supreme Court Rule 222(b), the terms of which are incorporated by reference.

32.     As a direct and proximate result of the Defendants' calculated and reprehensible conduct, the Plaintiff developed ovarian cancer, which required surgeries and treatments, and was otherwise injured in a personal and pecuniary nature.

## COUNT I – STRICT LIABILITY FOR FAILURE TO WARN
### (Imerys Talc, Johnson & Johnson Defendants)

33.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

34. At all pertinent times, Imerys Talc mined and sold talc to the Johnson & Johnson Defendants, which it knew that Johnson & Johnson was then packaging and selling to consumers as the PRODUCTS and it knew that consumers of the PRODUCTS were using it to powder their perineal regions.

35. At all pertinent times, Imerys Talc knew and/or should have known of the unreasonably dangerous and carcinogenic nature of the talc it was selling to the Johnson & Johnson Defendants, especially when used in a woman's perineal regions, and it knew or should have known that Johnson & Johnson was not warning its consumers of this danger.

36. At all pertinent times, the Johnson & Johnson Defendants were manufacturing, marketing, testing, promoting, selling and/or distributing the PRODUCTS in the regular course of business.

37. At all pertinent times, Plaintiff used the PRODUCTS to powder her perineal area, which is a reasonably foreseeable use.

38. At all pertinent times, the all the Defendants in this action knew or should have known that the use of talcum powder based products in the perineal area significantly increases the risk of ovarian cancer based upon scientific knowledge dating back to the 1960s.

39. At all pertinent times, including the time of sale and consumption, the PRODUCTS, when put to the aforementioned reasonably foreseeable use, were in an unreasonably dangerous and defective condition because they failed to contain adequate warnings and/or instructions regarding the increased risk of ovarian cancer associated with the use of the PRODUCTS by women to powder their perineal area.

40. Had the Plaintiff received a warning that the use of the PRODUCTS would have significantly increased her risk of ovarian cancer, she would not have used the same.

9

41.     The development of ovarian cancer was the direct and proximate result of the unreasonably dangerous and defective condition of the PRODUCTS at the time of sale and consumption, including their lack of warnings; and Plaintiff was caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiff prays for judgment against Imerys Talc and the Johnson & Johnson Defendants in a fair and reasonable sum in excess of $50,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT II – NEGLIGENCE
### (Imerys Talc)

42.     Plaintiff hereby incorporates by reference each of the preceding paragraphs as if fully set forth herein.

43.     At all pertinent times, Imerys Talc mined and sold talc to the Johnson & Johnson Defendants, which it knew and/or should have known was then being packaged and sold to consumers as the PRODUCTS by the Johnson and Johnson Defendants.   Further, Imerys Talc knew and/or should have known that consumers of the PRODUCTS were using it to powder their perineal regions.

44.     At all pertinent times, Imerys Talc knew or should have known that the use of talcum powder based products in the perineal area significantly increases the risk of ovarian cancer based upon scientific knowledge dating back to the 1960s.

45.     At all pertinent times, Imerys Talc knew or should have known that Johnson & Johnson was not providing warnings to consumers of the PRODUCTS of the risk of ovarian cancer posed by talc contained therein.

46.     At all pertinent times, Imerys Talc was negligent in providing talc to the Johnson & Johnson Defendants, when it knew or should have known that the talc would be used in the

10

PRODUCTS, without adequately taking steps to ensure that ultimate consumers of the PRODUCTS, including Plaintiff, received the information that Imerys Talc possessed on the carcinogenic properties of talc, including its risk of causing ovarian cancer.

47.     As a direct and proximate result of Imerys Talc's negligence, Plaintiff purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused her to develop ovarian cancer; and Plaintiff was caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiff prays for judgment against Imerys Talc in a fair and reasonable sum in excess of $50,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

### COUNT III-NEGLIGENCE
### (Johnson & Johnson Defendants)

48.     Plaintiff hereby incorporates by reference each of the preceding paragraphs as if fully set forth herein.

49.     The Johnson & Johnson Defendants were negligent in marketing, designing, manufacturing, producing, supplying, inspecting, testing, selling and/or distributing the PRODUCTS in one or more of the following respects:

   a. In failing to warn the Plaintiff of the hazards associated with the use of the PRODUCTS;

   b. In failing to properly test their products to determine adequacy and effectiveness or safety measures, if any, prior to releasing the PRODUCTS for consumer use;

   c. In failing to properly test their products to determine the increased risk of ovarian cancer during the normal and/or intended use of the PRODUCTS;

   d. In failing to inform ultimate users, such as the Plaintiff as to the safe and proper methods of handling and using the PRODUCTS;

11

e.  In failing to remove the PRODUCTS from the market when the Defendants knew or should have known the PRODUCTS were defective;

f.  In failing to instruct the ultimate users, such as the Plaintiff, as to the methods for reducing the type of exposure to the PRODUCTS which caused increased risk in ovarian cancer;

g.  In failing to inform the public in general and the Plaintiff in particular of the known dangers of using the PRODUCTS for dusting the perineum;

h.  In failing to advise users how to prevent or reduce exposure that caused increase risk for ovarian cancer;

i.  Marketing and labeling the PRODUCTS as safe for all uses despite knowledge to the contrary; and,

j.  In failing to act like a reasonable prudent company under similar circumstances

50.  At all pertinent times, the Johnson & Johnson Defendants knew or should have known that the PRODUCTS were unreasonably dangerous and defective when put to their reasonably anticipated use.

51.  As a direct and proximate result of the Johnson & Johnson Defendants' negligence in one or more of the aforementioned ways, Plaintiff purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused her to develop ovarian cancer; and Plaintiff was caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiff prays for judgment against the Johnson and Johnson Defendants in a fair and reasonable sum in excess of $50,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT IV – BREACH OF EXPRESS WARRANTY
### (Johnson & Johnson Defendants)

52.  Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

53.     The Johnson & Johnson Defendants expressly warranted, through direct-to-consumer marketing, advertisements, and labels, that the PRODUCTS were safe and effective for reasonably anticipated uses, including use by women in the perineal area.

54.     The PRODUCTS did not conform to these express representations because they cause serious injury when used by women in the perineal area in the form of ovarian cancer.

55.     As a direct and proximate result of the Defendants' breach of warranty, Plaintiff purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused her to develop ovarian cancer; and Plaintiff was caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiff prays for judgment against the Johnson and Johnson Defendants in a fair and reasonable sum in excess of $50,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT V-BREACH OF IMPLIED WARRANTIES
### (Johnson & Johnson Defendants)

56.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

57.     At the time the Defendants manufactured, marketed, labeled, promoted, distributed and/or sold the PRODUCTS, the Johnson & Johnson Defendants knew of the uses for which the PRODUCTS were intended, including use by women in the perineal area, and impliedly warranted the PRODUCTS to be of merchantable quality and safe for such use.

58.     Defendants breached their implied warranties of the PRODUCTS sold to Plaintiff because they were not fit for their common, ordinary and intended uses, including use by women in the perineal area.

13

59.     As a direct, foreseeable and proximate result of the Defendants' breaches of implied warranties, Plaintiff purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused her to develop ovarian cancer; and Plaintiff was caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiff prays for judgment against the Johnson and Johnson Defendants in a fair and reasonable sum in excess of $50,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT VI – CIVIL CONSPIRACY
### (All Defendants)

60.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

61.     Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated and conspired among themselves to cause Plaintiff's injuries, disease, and/or illnesses by exposing the Plaintiff to harmful and dangerous PRODUCTS. Defendants further knowingly agreed, contrived, confederated and conspired to deprive the Plaintiff of the opportunity of informed free choice as to whether to use the PRODUCTS or to expose her to said dangers. Defendants committed the above described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to the PRODUCTS.

62.     In furtherance of said conspiracies, Defendants performed the following overt acts:

    a.  For many decades, Defendants, individually, jointly, and in conspiracy with each other, have been in possession of medical and scientific data, literature and test reports which clearly indicated that use of their by women resulting from ordinary and foreseeable use of the PRODUCTS were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;

14

b. Despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully and maliciously:

  i. Withheld, concealed and suppressed said medical information regarding the increased risk of ovarian cancer from Plaintiff (as set out in the "Facts" section of this pleading); In addition, on July 27, 2005 Defendants as part of the TIPTF corresponded and agreed to edit and delete portions of scientific papers being submitted on their behalf to the United States Toxicology Program in an attempt to prevent talc from being classified as a carcinogen;

  ii. The Defendants through the TIPTF instituted a "defense strategy" to defend talc at all costs. Admittedly, the Defendants through the TIPTF used their influence over the NTP Subcommittee, and the threat of litigation against the NTP to prevent the NTP from classifying talc as a carcinogen on its 10th RoC. According to the Defendants, ". . . we believe these strategies paid-off";

  iii. Caused to be released, published and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of ovarian cancer which Defendants knew were incorrect, incomplete, outdated, and misleading. Specifically, the Defendants through the TIPTF collectively agreed to release false information to the public regarding the safety of talc on July 1, 1992; July 8, 1992; and November 17, 1994. In a letter dated September 17, 1997, the Defendants were criticized by their own Toxicologist consultant for releasing this false information to the public, yet nothing was done by the Defendants to correct or redact this public release of knowingly false information.

c. By these false and fraudulent representations, omissions, and concealments, Defendants intended to induce the Plaintiff and Plaintiff to rely upon said false and fraudulent representations, omissions and concealments, and to continue to expose herself to the dangers inherent in the use of and exposure to the PRODUCTS.

63. Plaintiff reasonably and in good faith relied upon the aforementioned fraudulent representations, omissions, and concealments made by Defendants regarding the nature of the PRODUCTS.

64. As a direct and proximate result of the aforementioned fraudulent representations, omissions, and concealments made by Defendants regarding the nature of their products and

15

Plaintiff's reliance thereon, Plaintiff purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused her to develop ovarian cancer; and Plaintiff was caused to incur medical bills, lost wages, and conscious pain and suffering.

WHEREFORE, Plaintiff prays for judgment against all Defendants, each of them, in a fair and reasonable sum in excess of $50,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT VII – CONCERT OF ACTION
### (All Defendants)

65.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

66.     At all pertinent times, Imerys Talc, the Johnson & Johnson Defendants, and the PCPC knew that the PRODUCTS should contain warnings on the risk of ovarian cancer posed by women using the product to powder the perineal region, but purposefully sought to suppress such information and omit from talc based products so as not to negatively affect sales and maintain the profits of the Johnson & Johnson Defendants, Imerys Talc, and the member of the PCPC.

67.     As a direct and proximate result of Defendants concerted action, Plaintiff purchased and used, as aforesaid, the PRODUCTS that directly and proximately caused her to develop ovarian cancer; and Plaintiff was caused to incur medical bills, lost wages, and conscious pain and suffering., comfort, instruction, guidance, counsel, training and support.

WHEREFORE, Plaintiff prays for judgment against all Defendants, each of them, in a fair and reasonable sum in excess of $50,000.00, together with costs expended herein and such further and other relief as the Court deems just and appropriate.

## COUNT VIII-PUNITIVE DAMAGES
### (All Defendants)

16

68.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

69.     The Defendants have acted willfully, wantonly, with an evil motive, and recklessly in one or more of the following ways:

    a.  Defendants knew of the unreasonably high risk of ovarian cancer posed by the PRODUCTS before manufacturing, marketing, distributing and/or selling the PRODUCTS, yet purposefully proceeded with such action;

    b.  Despite their knowledge of the high risk of ovarian cancer associated with the PRODUCTS, Defendants affirmatively minimized this risk through marketing and promotional efforts and product labeling;

    c.  Through the actions outlined above, Defendants expressed a reckless indifference to the safety of users of the PRODUCTS and the Plaintiff. Defendants' conduct, as described herein, knowing the dangers and risks of the PRODUCTS, yet concealing and/or omitting this information, in furtherance of their conspiracy and concerted action was outrageous because of Defendants' evil motive or a reckless indifference to the safety of users of the PRODUCTS.

70.     As a direct and proximate result of the willful, wanton, evilly motivated and/or reckless conduct of the Defendants, the Plaintiff has sustained damages as set forth above.

WHEREFORE, Plaintiff prays for a judgment for punitive damages against all Defendants in a fair and reasonable amount sufficient to punish Defendants and deter them and others from engaging in similar conduct in the future, costs expended herein, and such further and other relief as the Court deems just and appropriate.

Dated: _May 14, 2014_                Respectfully submitted,

ONDER, SHELTON, O'LEARY &
PETERSON, LLC

By:   _____
James G. Onder, #6200444
Mark R. Niemeyer, #6295647
Michael S. Kruse, #6288321
Stephanie L. Rados, #6311318
110 E. Lockwood, 2nd Floor
St. Louis, MO 63119
314/963-9000 telephone
314/963-1700 facsimile
onder@onderlaw.com
niemeyer@onderlaw.com
kruse@onderlaw.com
*Attorneys for Plaintiff*