IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**LYNNE CEBULSKE,**

**Plaintiff,**

**v.**

**JOHNSON & JOHNSON, JOHNSON &
JOHNSON CONSUMER COMPANIES,
INC., IMERYS TALC AMERICA, INC.,
f/k/a LUZENAC AMERICA, INC., and
PERSONAL CARE PRODUCTS COUNCIL
f/k/a COSMETIC, TOILETRY, AND
FRAGRANCE ASSOCIATION (CTFA),**

No. 14-cv-627-DRH-SCW

**Defendants.**

## MEMORANDUM & ORDER

**HERNDON, District Judge:**

    This matter is before the Court on defendants Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc.'s motion to dismiss plaintiff's "concert of action" and conspiracy claims (Doc. 20) and defendant Imerys Talc America Inc. f/k/a Luzenac America, Inc.'s motion to dismiss plaintiff's concert of action and conspiracy claims (Doc. 28). Specifically, defendants move for dismissal of Counts VI and VII of plaintiff's complaint pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) arguing that the complaint does not plead sufficient facts. Naturally, plaintiffs oppose the motion, arguing defendants' motions lack

merit (Doc. 44). For the reasons stated below, defendants' motions to dismiss are **DENIED**.

## I. Introduction and Background

On May 14, 2012 plaintiff Lynne Cebulske was diagnosed with ovarian cancer. Plaintiff alleges the cause of the cancer was the result of her use of Johnson & Johnson Baby Powder and Shower to Shower (hereinafter "J&J products") to "dust her perineum for feminine hygiene purposes from approximately 1992 to 2014" (Doc. 3-1, ¶ 16). Plaintiff further alleges that her prolonged use of the J&J products caused her ovarian cancer, as she did not possess any of the risk factors commonly associated with the disease. Additionally, plaintiff asserts that women face an increased risk of ovarian cancer due to prolonged use of these talc based products in the genital area. Plaintiff supports these allegations by citing to various national studies dating back to the 1960s, many of which plaintiff claims defendants were aware of (Doc. 3-1, ¶ 18-23).

On May 14, 2014, plaintiff filed a complaint before the Circuit Court of St. Clair County alleging eight counts of tort liability recognized under the laws of Illinois (Doc. 3-1). Count I alleges strict liability for failure to warn against Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc. (hereinafter collectively "J&J") and Imerys; Counts II and III allege negligence against J&J and Imerys; Count IV alleges breach of express warranty against J&J; Count IV alleges breach of express warranty against J&J; Count V alleges breach of implied warranties against J&J; Count VI alleges civil conspiracy

against all defendants; Count VII alleges concert of action against all defendants; and Count VIII seeking a punitive damages award against all defendants.

On June 3, 2014, defendants J&J removed the case to this Court based on diversity jurisdiction (Doc. 3). Thereafter, defendants J&J and Imerys filed the pending motions to dismiss plaintiff's concert of action and conspiracy claims for failure to state a claim.

## II. Motion to Dismiss

A Rule 12(b)(6) motion challenges the sufficiency of the complaint to state a claim upon which relief can be granted. *Hallinan v. Fraternal Order of Police Chicago Lodge 7,* 570 F.3d 811, 820 (7th Cir. 2009). The Supreme Court explained in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007), that Rule 12(b)(6) dismissal is warranted if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face."

In making this assessment, the district court accepts as true all well-pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *See Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009); *St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 625 (7th Cir. 2007).

Even though *Twombly* (and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)) retooled federal pleading standards, notice pleading remains all that is required in a complaint. "A plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is

entitled to relief." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1083 (7th Cir. 2008) (citations and quotations omitted).

The Seventh Circuit Court of Appeals offers further guidance on what a complaint must do to withstand dismissal for failure to state a claim. The Court in *Pugh v. Tribune Co.,* 521 F.3d 686, 699 (7th Cir. 2008) reiterated the premise: "surviving a Rule 12(b)(6) motion requires more than labels and conclusions;" the complaint's allegations must "raise a right to relief above the speculative level." A plaintiff's claim "must be plausible on its face," that is, "the complaint must establish a non-negligible probability that the claim is valid…" *Smith v. Medical Benefit Administrators Group, Inc.,* 639 F.3d 277, 281 (7th Cir.2011).

Furthermore, a civil conspiracy claim that is "premised upon a course of fraudulent conduct can implicate Rule 9(b)'s heightened pleading requirements." *Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 507 (7th Cir.2007). Fed. R. Civ. P. 9(b) requires that a plaintiff alleging fraud "state with particularity the circumstances constituting fraud." Generally, pleading "with particularity" requires that a plaintiff describe the "who, what, when, where, and how" of the alleged fraud. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 441–42 (7th Cir. 2011); *See also Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir.2006) ("Rule 9(b) requires that facts such as the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff be alleged in detail.") (internal quotations omitted).

However, the pleading's structure for fraud claims may be modified, as facts may vary with a particular case. A civil conspiracy claim under Illinois law that is founded upon fraudulent conduct may implicate the arduous pleading requirements applicable to fraud claims (*Id.*).With these standards in mind, the Court turns to plaintiff's complaint.

### III. Analysis

a. Conspiracy (Count VI)

Under Illinois law, the elements of a civil conspiracy claim that a plaintiff must establish are: (1) an agreement between two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act. *Fritz v. Johnston,* 807 N.E.2d 461, 470 (Ill. 2004), *citing Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994)).

"The function of a [civil] conspiracy claim is to extend liability in tort beyond the active wrongdoer to those who have merely planned, assisted or encouraged the wrongdoer's acts." *Adcock*, 645 N.E.2d at 894, *quoting* W. Prosser, Torts § 46, at 293 (4th ed. 1971). Because civil conspiracy is not an independent cause of action, it requires an independent claim on which the conspiracy must first be based to be properly pled. *Indeck N. Amer. Power Fund v. Norweb,* 735 N.E.2d 649, 662 (Ill.App.2000), *citing Adcock*, 645 N.E.2d 888.[1]

---

[1] At the time this motion was filed, defendants J&J and Imerys did not challenge the underlying tort claims on which the civil conspiracy claim is grounded.

In this case, defendants argue that plaintiff's conspiracy claim was insufficiently pled and that the complaint "improperly lumps defendants together" (Doc. 28-1). Plaintiff responded by stating that she provided great detail as to all elements of the conspiracy claim. Plaintiff's complaint sets forth various national studies offering evidence of a causal connection between the use of defendants' products and ovarian cancer (Doc. 3-1 ¶ 18-25). Plaintiff alleges that defendants knew of these medical reports and scientific data for many years, which indicated that the "ordinary and foreseeable use of the [J&J Baby Powder and Shower to Shower] products [by women] were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly" (Doc. 3-1 ¶ 62).

Plaintiff alleges that in defendants' roles as members of the Cosmetic Toiletry and Fragrancy Association (CTFA) and as "primary actors and contributors" of the Talc Interested Party Task Force (TIPTF), J&J and Imerys "caused to be released, published, and disseminated medical and scientific data, literature, and test reports containing information regarding the risks of ovarian cancer which Defendants knew were incorrect, incomplete, outdated, and misleading. Specifically, the defendants through the TIPTF collectively agreed to release false information to the public regarding the safety of talc on July 1, 1992; July 8, 1992; and November 17, 1994" (Doc. 3-1 ¶62). Plaintiffs further alleged that the task force allegedly hired scientists to perform biased research, doctored the reports of these scientists, and knowingly released this false information about the safety of talc to the public, despite internal criticisms

(Doc. 3-1 ¶22). Furthermore, according to plaintiff's complaint, the stated purpose of TIPTF was "to pool financial resources of these companies in an effort to collectively defend talc use at all costs and to prevent regulation of any type over this industry" (Id.).

The complaint asserts that J&J and Imerys united in helping to form TIPTF and in promoting its objective to bar industry regulations by preventing information about any correlation between ovarian cancer talc use in the genital area from reaching the general public through unlawful means. Accordingly, the Court determines that plaintiff has stated sufficient facts to allege the elements of a civil conspiracy under Illinois law. Therefore, even under the heightened pleading standard of Fed. R. Civ. P. 9(b) defendants' motions to dismiss as to Count VI (civil conspiracy) are denied.

### b. Concert of Action (Count VII)

Defendants J&J and Imerys filed their motions to dismiss plaintiff's concert of action claims arguing that no factually supported allegations of any concerted action between the defendants were set forth in the complaint. Defendants argue that plaintiff failed to implicate the elements for in-concert liability under Illinois law and seek dismissal of Count VII. Plaintiff responded arguing that she pled numerous facts supporting each element of the claim. The Illinois Supreme Court has stated that "concert of action" occurs when "a tortious act is committed with another person pursuant to a common design, or when one party renders substantial assistance to another knowing that the other's conduct constitutes a

breach of duty." See e.g., *Woods v. Cole*, 693 N.E.2d 333, 337 (Ill.1998), *citing* Restatement (Second) of Torts §§ 876(a), (b) (1979).

Under a concert of action theory, plaintiff must show that a tacit agreement existed among defendants to perform a tortious act. Illinois has adopted the approach set forth in the *Restatement (Second) of Torts* for determining whether defendants have engaged in concerted action. See *Simmons v. Homatas*, 925 N.E.2d 1089, 1100 (Ill. 2010); *Wolf v. Liberis*, 505 N.E.2d 1202, 1208, (Ill.App. 1987). The Restatement provides:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he:
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement (Second) of Torts § 876 (1979). Plaintiffs here have alleged that the defendants pursued a common plan or tacitly agreed to commit the tortious acts about which they complain. Plaintiff's complaint specifically alleges the defendants worked together as contributors to TPITF to knowingly release to the public the false information and doctored reports about the safety of talc use (Doc. 3-1 ¶22). Comment (a) to Restatement (Second) of Torts § 876 states that "parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result. The

agreement need not be expressed in words and may be implied and understood to exist from the conduct itself." Restatement (Second) of Torts § 876, cmt a (1979). As mentioned above, the complaint alleges that defendants "caused to be released, published, and disseminated medical and scientific data, literature, and test reports containing information regarding the risks of ovarian cancer which Defendants knew were incorrect, incomplete, outdated, and misleading" (Doc. 3-1 ¶62). The complaint also alleges that defendants were aware of the various national studies and scientific reports noting the risks associated with talcum powder use in the female genital, yet defendants still remained active members CTFA and key backers of TIPTF. The allegations as to the doctored reports and TIPTF's knowing release of false information also include allegations against J&J and Imerys that the actions on the part of TIPTF had been "well-coordinated and planned by these companies and organizations [supporting TIPTF] over the past four decades in an effort to prevent regulation of talc and to create confusion to the consuming public about the true hazards of talc relative to ovarian cancer" (Doc. 3-1 ¶22). Therefore, the Court determines that plaintiff has stated sufficient facts to allege the elements of a concert of action claim under Illinois law. Defendants' motions to dismiss as to Count VII (concert of action), are denied.

### IV. Conclusion

For the reasons stated above, defendants Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc. and Imerys Talc America Inc.'s motions to

dismiss (Docs. 20, & 28, respectively) pursuant to Fed. R. Civ. P. 12(b)(6) are

**DENIED**.

    **IT IS SO ORDERED.**

Signed this 17th day of March, 2015.

Digitally signed by David R. Herndon
Date: 2015.03.17 13:43:39 -05'00'

                                  **United States District Judge**